## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD ZAWATSKY, and CATHERINE ZAWATSKY, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| Plaintiff, | |
| v. | |
| | **<u>JURY TRIAL DEMANDED</u>** |
| VROOM, INC., PAUL J. HENNESSY, and DAVID K. JONES, | |
| Defendants. | |

Plaintiffs Richard Zawatsky and Catherine Zawatsky (together, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Vroom, Inc. ("Vroom" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Vroom; and (c) review of other publicly available information concerning Vroom.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Vroom securities between November 11, 2020 and March 3, 2021, inclusive (the "Class Period"). Plaintiffs pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Vroom operates an end-to-end ecommerce platform that sells fully reconditioned vehicles. It purports to offer an "exceptional ecommerce experience" that provides customers with transparent pricing, real-time financing, and nationwide contact-free delivery.

3.      On March 3, 2021, after the market closed, Vroom announced its fourth quarter and full year 2020 financial results in a press release. Therein, the Company reported that fourth quarter "Ecommerce Vehicle gross profit per unit decreased 13.1% to $878, driven primarily by lower sales margins, partially offset by improvements in inbound logistics and reconditioning costs per unit." Vroom also reported that for the fourth quarter, its "[n]et loss increased 41.9% to $60.7 million."

4.      On this news, the Company's stock price fell $12.29 per share, or 27.9%, to close at $31.61 per share on March 4, 2021, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Vroom had not demonstrated that it was able to control and scale growth in respect to its salesforce to meet the demand for its products; (2) that, as a result, the Company was forced to discount aged inventory to move through its retail channels or liquidated in its wholesale channels; (3) that, as a result, the ecommerce gross profit per unit was reasonably likely to decline; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including  the  dissemination  of  materially  false  and/or  misleading  information,  occurred  in

substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiffs Richard Zawatsky and Catherine Zawatsky, as set forth in the accompanying certification, incorporated by reference herein, purchased Vroom securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Vroom is incorporated under the laws of Delaware with its principal executive offices located in New York, New York. Vroom's common stock trades on the NASDAQ exchange under the symbol "VRM."

13.     Defendant Paul J. Hennessy ("Hennessy") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant David K. Jones ("Jones") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Hennessy and Jones (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to

prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Vroom operates an end-to-end ecommerce platform that sells fully reconditioned vehicles. It purports to offer an "exceptional ecommerce experience" that provides customers with transparent pricing, real-time financing, and nationwide contact-free delivery.

17.     The Company sources inventory from auctions, consumers, rental car companies, original equipment manufacturers, and dealers. Vroom purports to use an asset-light strategy in its reconditioning and logistics operations to optimize the ownership and operation of assets by the Company with strategic third-party partnerships.

18.     In June 2020, Vroom completed its initial public offering, selling 24,437,500 shares of common stock for $22.00 per share. The Company received proceeds of $504 million, net of underwriting discounts and before deducting offering expenses. In the offering documents, Vroom stated that these proceeds would be used for general corporate purposes, including advertising and marketing, technology development, and operating expenses.

19.     Due to the lower demand for vehicles at the onset of COVID-19, the Company sold down its inventory during first quarter of 2020. However, beginning May 2020, there was a "demand snapback" that led Vroom to build back its inventory and scale its operations.

**Materially False and Misleading**
**Statements Issued During the Class Period**

20.     The Class Period begins on November 11, 2020. On that day, Vroom announced

its third quarter 2020 financial results in a press release that stated, in relevant part:[1]

**Financial Outlook**

We expect another quarter of significant year-over-year growth in ecommerce unit
sales and revenue for Q4 2020 and continued strength in total ecommerce gross
profit per unit. Through the third quarter, our year-to-date ecommerce units sold
has grown 86% over the prior year. Combined with our strong sequential growth
quarter to quarter, we believe we are on track for continued growth into 2021. For
Q4 2020, we expect the following results:

- Ecommerce unit sales of 10,500 to 11,500, implying 25% sequential growth
  and Q4 year over year growth of 74% at the middle of the guidance range.

- *Average ecommerce selling price per unit of $24,500 to $25,500 and
  average ecommerce gross profit per unit of $2,050 to $2,150.*

- TDA unit sales of 1,400 to 1,600, average selling price per unit of $24,500
  to $25,500 and average gross profit per unit of $1,650 to $1,750.

- Wholesale unit sales of 6,000 to 7,000, average selling price per unit of
  $9,500 to $10,500 and average gross profit per unit of breakeven to $100.

- Total revenue of $372 to $414 million.

- Total gross profit of $24 to $28 million.

- EBITDA of ($52) to ($44) million.

- Stock-based compensation expense of $4.3 million.

- *Net loss per share of ($0.41) to ($0.35).*

21.     The same day, Vroom held a conference call in connection with the third quarter

2020 financial results. During the call, Defendant Hennessy stated: "Our outlook for e-commerce

unit sales reflects progression over the fourth quarter of the ongoing expansion of our customer

---

[1] Unless otherwise stated, all emphasis in bold and italics is added.

experience team, as we ramp up our sales support in anticipation of continued escalating sales growth in the New Year." He went on to tout the Company's ability to scale up its business to both obtain additional inventory and meet demand, in "unison":

> ***All those need to rise like in unison.*** This is a highly connected business. And so you don't want to have too much inventory not enough demand. So you need to regulate the relationship between demand and supply, which is how we build our brand, the amount of dollars we spend to bring in customers. . . .

> These things really need to move in unison or suddenly you get sideways and either not having enough supply to meet consumer demand, which will obviously upset customers and leave us with an excess of inventory. And the opposite would also be true. ***So it's much more about I would say, controlled and scaled growth, while keeping an eye on profitability so that the whole business moves forward in unison. That's really the trick if you will and we've demonstrated that we can do that.*** And we like our trajectory and are working to increase that trajectory.

22.     Later during the call, Defendant Hennessy assured: "I mentioned that we're investing to make sure we've got the sales capacity. ***And so we are not planning anything unique to lower prices to stimulate demand for the fourth quarter*** because we feel really good about the demand that we've got flowing into the business."

23.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2020, affirming the previously reported financial results. It also stated, in relevant part:

> ***Vehicle Gross Profit***

> Ecommerce vehicle gross profit increased $6.3 million, or 122.1%, from $5.2 million for the three months ended September 30, 2019 to $11.5 million for the three months ended September 30, 2020. The increase in vehicle gross profit was primarily attributable to a $373 increase in vehicle gross profit per unit, which increased vehicle gross profit by $3.3 million and the 3,260 increase in ecommerce units sold, which increased vehicle gross profit by $3.0 million for the three months ended September 30, 2020. Vehicle gross profit per unit increased from $929 for the three months ended September 30, 2019 to $1,302 for the three months ended September 30, 2020 primarily attributable to improvements in inbound logistics and reconditioning costs.

As we continue to mature our infrastructure, increase the number of VRCs and optimize our network of VRCs, we expect ecommerce vehicle gross profit per unit to continue to increase in the future driven by reduced costs across acquisitions, logistics and reconditioning.

24.     The above statements identified in ¶¶ 20-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that Vroom had not demonstrated that it was able to control and scale growth in respect to its salesforce to meet the demand for its products; (2) that, as a result, the Company was forced to discount aged inventory to move through its retail channels or liquidated in its wholesale channels; (3) that, as a result, the ecommerce gross profit per unit was reasonably likely to decline; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

25.     On March 3, 2021, after the market closed, Vroom announced its fourth quarter and full year 2020 financial results in a press release. Therein, the Company reported that fourth quarter "Ecommerce Vehicle gross profit per unit decreased 13.1% to $878, driven primarily by lower sales margins, partially offset by improvements in inbound logistics and reconditioning costs per unit." Vroom also reported that for the fourth quarter, its "[n]et loss increased 41.9% to $60.7 million."

26.     The same day, the Company held a conference call in connection with the results. During the call, defendant Hennessy revealed that Vroom lacked adequate sales personnel to meet demand:

As you saw in our fourth-quarter results and in our first-quarter guidance, we had lower gross profit per unit levels than we anticipated. In addition to greater depreciation than we expected, *the lower gross profit per unit is also because we were buying inventory in anticipation of and align with our demand.* The demand

arrived as expected, but due to the constraints in sales personnel and sales support personnel, we were unable to convert and process the sales associated with that demand. The result is that our inventory aged. ***That aged inventory needed to be discounted to move through our retail channels or liquidated in our wholesale channels.***

27.    Defendant Jones further explained that the Company had tripled its salesforce during the fourth quarter:

We believe we're now ahead of the curve in terms of sales support. ***Our primary third-party sales support function is now operating effectively with about 300 representatives servicing our customers, which is up from about 100 at the end of the third quarter.*** In addition, we've engaged with one of the top business process outsourcers in the nation to help us turn up another sales support function in the second half as we intend to stay ahead of our accelerating growth curve. Similarly, in customer support, we're making significant investments.

28.    During the same call, defendant Jones similarly stated:

We were selling inventory in Q4 that was purchased in Q3 during a 25-year-high pricing environment. That fact, combined with higher-than-expected seasonal depreciation in Q4 and the inability of our sales and support functions to service the accelerating demand, caused a shortfall in our vehicle gross profit per unit in Q4 versus our expectations.

*        *        *

In addition, as Paul discussed, as a result of the significant scaling of the business in the second half of '20, there was more volume to process than our capacity could deliver, which created backlogs. ***As a result, our inventory simply did not turn fast enough in Q4, and we had inventory that had aged and needed to be liquidated.*** This was evidenced by our 77 days to sale in Q4, which was up from 66 in Q2 earlier in the year. As a result, wholesale gross profit for the quarter was negative as we moved aged inventory through the wholesale channel.

The fourth-quarter results also turned the full-year wholesale gross profit line slightly negative. ***For Q1, we expect those wholesale units to be in a range of 7,000 to 8,000 units. And we expect a wholesale gross profit per unit to continue to be negative in the range of $450 to $600 per unit.***

29.    On this news, the Company's stock price fell $12.29 per share, or 27.9%, to close at $31.61 per share on March 4, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Vroom securities between November 11, 2020 and March 3, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Vroom's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.  Millions of Vroom shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Vroom or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Vroom; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

36.     The market for Vroom's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Vroom's securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Vroom's securities relying upon the integrity of the market price of the Company's securities and market information relating to Vroom, and have been damaged thereby.

37.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Vroom's securities, by publicly issuing false and/or misleading statements

and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Vroom's business, operations, and prospects as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vroom's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

39.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

40.     During the Class Period, Plaintiffs and the Class purchased Vroom's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

41.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Vroom, their control over, and/or receipt and/or modification of Vroom's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vroom, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

42.    The market for Vroom's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Vroom's securities traded at artificially inflated prices during the Class Period.  On February 12, 2021, the Company's share price closed at a Class Period high of $50.93 per share. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Vroom's securities and market information relating to Vroom, and have been damaged thereby.

43.    During the Class Period, the artificial inflation of Vroom's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Vroom's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Vroom and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

44.     At all relevant times, the market for Vroom's securities was an efficient market for the following reasons, among others:

(a)     Vroom shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Vroom filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Vroom regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Vroom was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

45.     As a result of the foregoing, the market for Vroom's securities promptly digested current information regarding Vroom from all publicly available sources and reflected such

information in Vroom's share price. Under these circumstances, all purchasers of Vroom's securities during the Class Period suffered similar injury through their purchase of Vroom's securities at artificially inflated prices and a presumption of reliance applies.

46.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vroom who knew that the statement was false when made.

### FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

48.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Vroom's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vroom's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Vroom's financial well-being and prospects, as specified herein.

52.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vroom's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Vroom and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vroom's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Vroom's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Vroom's securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems

that Vroom was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Vroom securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

59.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

60.     Individual Defendants acted as controlling persons of Vroom within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements

alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Vroom and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: March 22, 2021

By:  */s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiffs Richard and*
*Catherine Zawatsky*

# SWORN CERTIFICATION OF PLAINTIFF

# VROOM, INC. SECURITIES LITIGATION

I, Richard Zawatsky, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Vroom, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Vroom, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


3/11/2021

_____
Date

DocuSigned by:

*Richard Zawatsky*
34B047D5FCB84B7...
_____
Richard Zawatsky

**Richard and Catherine Zawatsky's Transactions in Vroom, Inc. (VRM)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/3/2021 | Bought | 50 | $40.6679 |
| 2/25/2021 | Bought | 50 | $42.9700 |

**SWORN CERTIFICATION OF PLAINTIFF**

**VROOM, INC. SECURITIES LITIGATION**

I, Catherine Zawatsky, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
   Plaintiff motion on my behalf.

2. I did not purchase the Vroom, Inc. securities that are the subject of this action at the
   direction of plaintiff's counsel or in order to participate in any private action arising
   under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at
   deposition and trial, if necessary.

4. My transactions in Vroom, Inc. securities during the Class Period set forth in the
   Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class
   under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive
   my pro rata share of any recovery or as ordered or approved by the court, including
   the award to a representative plaintiff of reasonable costs and expenses (including lost
   wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/11/2021

_____
Date

DocuSigned by:

*Catherine Zawatsky*
34B047D5FCB84B7...
_____
Catherine Zawatsky

**Richard and Catherine Zawatsky's Transactions in Vroom, Inc. (VRM)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/3/2021 | Bought | 50 | $40.6679 |
| 2/25/2021 | Bought | 50 | $42.9700 |